32          NEW YORK PRACTICE REPORTS.

World Mutual Life Ins. Co. agt. Bund "Hand in Hand," &c.

# N. Y. SUPERIOR COURT.

THE WORLD MUTUAL LIFE INSURANCE COMPANY, plaintiff, agt. THE BUND "HAND IN HAND," ALBERT ELSASSER, FERDINAND SEIDEL and THE NEW YORK LIFE INSURANCE CO., defendants.

*Breach of contract — injunction.*

The plaintiff, a mutual life insurance company, entered into a contract with the defendant, a club incorporation, by which the plaintiff agreed to insure the lives of all the members of the defendant, who should be accepted by the plaintiff at the rate of the regular premiums established, or to be established by the plaintiff ; to accept through the instrumentality of the defendant payment of the said premiums in weekly, monthly or quarterly installments ; and to grant to the defendant certain commissions and allowances for procuring the business and actively assisting in its management, containing minute provisions as to the rights and duties of the contracting parties, and of the holders of the policies to be issued under it. It was also agreed that as long as the defendant did not number 20,000 paying members, and a single policy remained in force, the contract should not be dissolved.

Under this contract the defendant effected insurance on the lives of about 1,500 of its members, so that defendant became a highly important branch of plaintiff's business. This result was obtained by the plaintiff at great cost and labor, by extending at all times liberal aid to the defendant, and by making liberal advances to the agents of the defendant to be repaid from future business.

For certain reasons the relations between these corporations became highly unpleasant, and the defendant has taken steps to transfer its insurance business to another life insurance company.

This action was brought by the plaintiff, and an injunction granted restraining the unlawful action of the defendant in violating the contract, but not to affect the business or property of the defendant generally.

*Held,* on this motion, that the court had searched in and outside of the contract by which the rights of the parties are to be determined, for some justification of or legal excuse for the conduct of the defendant,

World Mutual Life Ins. Co. agt. Bund "Hand in Hand," &c.

but had not been able to discover any. Upon this point the burden of proof rests with the defendant.

*Held,* also, that upon well-settled principles of equity jurisprudence the plaintiff has shown itself entitled to the continuance of the injunction, until the final determination of the rights of the parties upon the trial.

*At Special Term, December,* 1873.

MOTION for continuance of injunction.

*Prentice & Mather,* for the motion.

*James D. Reymert, and Fullerton, Knox & Crosby,* opposed.

FREEDMAN, *J.*—The defendant, "Bund Hand in Hand," is a corporation incorporated under and in pursuance of an act entitled, "An act for the incorporation of societies or clubs for certain social and recreative purposes," passed April 11th, 1865. Its object is to provide relief to sick and poor members, and to effect insurance on the lives of all members in a legally incorporated life insurance company. To carry out this object the said "Bund Hand in Hand," on or about the 4th of April, 1872, entered into a contract with the plaintiff, whereby the latter agreed to insure the lives of all the members of the Bund, who should be accepted by the plaintiff, at the rate of the regular premium established or to be established by the plaintiff; to accept, through the instrumentality of the Bund, payment of the said premiums in weekly, monthly or quarterly installments; and to grant to the Bund certain commissions and allowances for procuring the business and actively assisting in its management. The contract contains minute provisions as to the rights and duties of the contracting parties, and of the holders of the policies to be issued under it. They are too numerous to be noticed in detail. The plaintiff agreed, among other things, not to allow, within the territorial limits of the states, New York, New Jersey and Connecticut, the same terms to any other organization that might enter into competition with the Bund.

The latter bound itself not to insure its members in any other than plaintiff's company. It was also mutually agreed that as long as the Bund did not number 20,000 paying members and a single policy remained in force, the contract should never be dissolved.

By the terms of the constitution of the Bund, the commissions to be allowed by the plaintiff were to pass into the treasury of the Bund and to constitute a fund, from which members in certain cases should derive certain benefits ; and the contract with the plaintiff was regarded as offering such great inducements to members, that the fact of its execution was incorporated into the constitution of the Bund and announced to the world in the following language :

" The Bund has made a contract with the World Mutual Life Insurance Company, an old, legally incorporated life insurance company, well known to the public for its solidity, wherein are secured to the society :

a., a lower rate ;

b., the agent's commission ;

c., the necessary printing ; and

d., an allowance for management, increasing with the increase of membership."

Under this contract the Bund Hand in Hand effected insurance on the lives of about 1,500 of its members, so that said society became a highly important branch of plaintiff's business. This result was obtained by the plaintiff at great cost and labor, by extending at all times liberal aid to the Bund, and by making liberal advances to the agents of the Bund to be repaid from future earnings.

For reasons not necessary to discuss, the relations between these two corporations have become highly unpleasant, and the Bund has taken some steps to transfer its insurance business to the New York Life Insurance Company. It is true that no contract to this effect has yet been executed. But the evidence is clear and convincing that the execution of one is contemplated, and that negotiations for that purpose were

NEW YORK PRACTICE REPORTS. **35**

World Mutual Life Ins. Co. agt. Bund "Hand in Hand," &c.

had.  The evidence also shows that an agitation has been set on foot by some of the officers of the Bund to induce the members of that corporation to suffer their policies in plaintiff's company to lapse, and then to effect a new insurance in the New York Life Insurance Company.

I have searched in and outside of the contract by which the rights of the parties are to be determined, for some justification of, or legal excuse for such conduct, but have not been able to discover any.  Upon this point the burden of proof rests with the Bund.  The circumstances relied on as constituting breaches of the contract on the part of the World Mutual Life Insurance Company, namely, delay in passing upon applications for insurance, the rejection of certain applicants, &c., &c., seem to be matters which under the contract rested wholly in the discretion of that company.  They might have been, and if they constituted real grievances, they should have been submitted to the board of conference provided for in the contract; but the Bund did not see fit to resort to this remedy.  Nor can the World Mutual Life Insurance Company be tried in *this* action upon charges of insolvency and reckless management of its own corporate affairs.  If true, these charges should be made and submitted to the authorities charged by law with the duty of investigating them and taking suitable action thereon.  Before they are thus established, the Bund is not in a position to urge simply the precarious condition of the said company as matter of defense, because it might readily have provided in the contract itself for such a contingency, or for the right of terminating the contract for certain causes upon certain conditions.  Instead of doing so, it seems to have been the clear intent and deliberate purpose of the Bund that its fortunes should be indissolubly connected with the fortunes of the World Mutual Life Insurance Company.  In view of this fact I have no power to make a new or different contract for the parties.

Now it may well be, that many members of the Bund are

desirous of severing their relations with the plaintiff; and if in the exercise of their own individual judgment they should see fit to suffer their policies to lapse and to take out new ones in the New York Life Insurance Company, neither the plaintiff nor the Bund can complain. But neither the Bund, nor any of its officers, has the right to influence them, directly or indirectly, in this respect. All corporate action to this end is unlawful. Nor can any person while holding an official position in the Bund, be permitted, under the plea of individual action, to produce this result or to reap any advantage or benefit from such action. Even if sufficient causes existed for which a court of equity could grant a dissolution of the contract, yet, as long as the ability on the part of the plaintiff to fulfill its part of the contract continues, such dissolution, in view of the fact that there are unadjusted accounts between the parties and a balance due to the plaintiff, could be decreed only after an accounting and upon restitution. He who seeks equity must do equity. So if at any time plaintiff should for any reason become incapacitated from performing its duties under the contract, the Bund may have relief on a proper application for that purpose, and upon such terms as may be just. But no such relief is prayed for in the answer. The Bund and the defendants, Elsasser and Seidel, who are officers thereof, simply deny the breach of contract alleged against them, and then they aver a breach on plaintiff's part for which they claim damages. Their position in this respect, as the case now stands, is not a tenable one.

The injunction, as modified, does not affect the business or the property of the Bund generally, but restrains only the unlawful action above referred to. Upon well-settled principles of equity jurisprudence the plaintiff has shown itself entitled to its continuance until the final determination of the rights of the parties upon the trial, and the motion must, therefore, be granted, and the injunction continued, with ten dollars costs.